## LEWIS D. BROKAW

### *v.*

## THE EXECUTORS OF GARRET G. BROKAW, deceased.

1. All the facts essential to show the complainant's right to relief must be averred in his bill with certainty and clearness, and positively.

2. Any writing or act which clearly indicates that the assignor intends to make over a fund belonging to him, amounts, in equity, to an assignment of the fund.

3. At law an order drawn by a creditor on his debtor, in favor of a third person, will not give the third person a right of action against the debtor un-

less he accepts the order, but equity will treat an unaccepted order as a valid assignment of the debt, if the order has the support of a valuable consideration, but ñot if it is without such support.

4. In contests respecting property held in trust, where the interests of the *cestuis que trust* stand opposed to the right set up by the complainant, the *cestuis que trust* are necessary parties.

On demurrer.

*Mr. James J. Bergen,* for demurrants.

*Mr. Woodbridge Strong,* for defendants.

VAN FLEET, V. C.

The demurrer filed in this case presents two questions for decision : first, whether, taking all the averments of the bill, which are alleged with that degree of certainty and directness which the rules of pleading require, to be true, the bill exhibits a case which entitles the complainant to relief; and second, whether, if the bill is sufficient, the suit is not so defective for the want of necessary parties that no relief can be given to the complainant on the present record. The ground on which the complainant's right to relief rests, as I understand his case, is that he has acquired, by an assignment which is valid in equity, a title or right to certain funds in the hands of the defendants, which they refuse to pay to him. And this suit is brought to enforce that right.

The complainant traces his right to what he claims through Samuel S. Brokaw. He is the origin or source of whatever right the complainant possesses. Samuel S. Brokaw was the father of Garret G. Brokaw. By the will of Garret G. Brokaw, which was admitted to probate on the 6th of March, 1877, his executors were ordered to sell all his real estate and divide the proceeds into two equal parts. One part was given to his wife absolutely. With regard to the other part, the will directs as follows :

"And the other equal one-half thereof I give and bequeath to my executors, in trust, safely to invest the same, and pay to my father, from time to

Brokaw *v.* Brokaw.

·time, whenever he shall desire the same and ask for it, so much of the interest, and also so much of the principal, as he, in his uncontrolled judgment, shall require for his own comfortable support and maintenance so long as he shall live; and in case my father's mental faculties shall become impaired, so that he shall be unable to appropriate and use the money as herein provided, then and in that case, I direct my executors to use and expend so much of said money, principal and interest, as shall be needful and proper for his support so long as he shall live. So much of the money thus set apart for the needs of my father, as shall remain after his death, if any, I give and bequeath to all the children of my deceased brothers, Isaac Brokaw and John Brokaw, who shall be living at the time of the death of my father, share and share alike, to be equally divided to and among them *per capita.*"

The complainant was the nephew of Samuel S. Brokaw. The complainant, by his bill, says that Samuel S. Brokaw, in the early part of 1881, made complaint to him that he was not receiving from the executors of Garret G. Brokaw, deceased, such support, maintenance and attention as he was entitled to under his son's will, and that thereupon a contract was made between Samuel S. Brokaw and himself as follows: he promised Samuel S. Brokaw he would visit him from time to time to look after his condition and comfort, and see that he was provided for and attended to according to the requirement of the will, and that Samuel S. Brokaw promised him (the complainant) that he would require the defendants, as the executors of his son, to compensate the complainant for his time and services, and such expenditures as he might be required to make. The bill then says that Samuel S. Brokaw, in order to provide compensation to the complainant out of the estate of Garret G. Brokaw, deceased, for the complainant's time and attention already bestowed, and to be thereafter bestowed, in looking after his comfort and welfare, and to re-imburse the complainant for such small expenditures as he might be required to make, and which, to some extent, he had already made, drew an order on one of the defendants in the following words:

" To Archibald C. Mollison, Esq., one of the executors of Garret G. Brokaw, deceased: Pay the sum of $486 to the order of Lewis D. Brokaw from the proceeds of the sale of real estate of Garret G. Brokaw, said money being in my judgment, necessary for my support and maintenance.

" Bound Brook, N. J., February 26th, 1881.      SAMUEL S. BROKAW."

The complainant further says that this order was delivered to him, and that, from the time of its date down to the death of Samuel S. Brokaw, which occurred in the fall of 1884, he continued to visit his uncle to see to it that he was comfortably and suitably cared for, and to attend to his wants from time to time. He also says that the order was presented to the defendants both before and after his uncle's death, and payment of the sum mentioned in it demanded, but that they always refused to pay, though they had funds in hand, arising from the sale of their testator's real estate, more than sufficient to pay it. This summary presents all the material facts of the complainant's case. The bill contains many other averments, but the others are so manifestly immaterial, in my judgment, as to require neither discussion nor mention.

The form of the instrument which the complainant claims effected a transfer of this fund is unquestionably sufficient to constitute a good assignment in equity. Courts of equity, in such matters, pay very little attention to form, their great desire being to give effect to the intention of the parties, and, if that can be clearly discerned, they carry it into effect regardless of the method by which it is expressed. Any order, writing or act which clearly indicates that the assignor intended to make over a fund belonging to him, amounts in equity to an assignment of the fund. *Shannon* v. *Hoboken, 10 Stew. Eq. 123 ; S. C. on appeal, 10 Stew. Eq. 318.* But the question here is, Does the bill show that the assignor had anything to assign? The legal title to the fund in controversy was vested in the executors. The will, by plain words, gives the fund to them, with direction to invest, and to pay, from time to time, to the testator's father, so much of both principal and interest as he, in the exercise of an uncontrolled judgment, shall require for his own comfortable support and maintenance. The court, endeavoring to ascertain the meaning of the testator in respect to this fund, must consider each sentence of that paragraph of his will, which is above quoted at length, and then should adopt that construction which will give full effect to each of its provisions. The direction to invest the fund, and to pay, not at once, but from time to time, and not

from the principal alone, but from the interest which should accrue on the principal, as well as the fact that the payments were to be made for a continuing purpose, namely, for the support of the father during his life, renders it entirely clear that it was not the testator's intention that his father should have complete dominion over the fund, with power to call for the payment of the whole of it at once, or to transfer its custody or administration to other persons than those appointed by the will. The father's power over the fund was limited to purposes of support.  He had a right to call upon the executors to pay him, from time to time, as the exigencies of his condition might require, so much of the fund as he, in the exercise of a free judgment, might deem proper for his own support.  But his requisitions were to be the result of a judgment, not a simple freak of desire, nor the calls of mere whim or caprice.  He had a right to have what, in the exercise of his judgment, he believed to be reasonably necessary for his support for the time being, but he had no right to donate the fund, or any part of it, nor to dispose of any part of it not required for his present need, or for his future need for such short period in the future as a reasonable regard for his comfort and convenience might seem to render proper.  I think he might very properly have required the executors to pay him so much of the fund as he believed would be necessary to provide him with support for three months to come. The will, it will be observed, imposed no duty upon the executors while the father retained the full use of his mind, except to invest the fund, and pay the father, from time to time, so much thereof as he should require for his support.  When he made a demand, the rights of the legatees in remainder made it the duty of the executors, before acceding to it, to be satisfied of two facts : first, that the sum demanded was the result of his own free judgment ; and, second, that he intended to apply the money to his own support.  He had no right to apply the money to any other purpose.

Now, it may be that, if it had appeared that the father had made a requisition upon the executors for a reasonable sum, which they refused to pay, and that his situation was such, at

the time the requisition was made, as to make it the duty of the executors to comply with his demand, and that, in this condition of affairs, the father had drawn an order upon the executors in favor of a third person for the sum demanded, upon which that person had advanced the money, it would be the duty of the court to give effect to the order as a valid assignment of so much of the fund as the executors ought to have paid. But that is not this case. The case just stated differs in two vital particulars from the one under consideration: first, in the case just stated it would have appeared that the assignment was made to procure money which the father was entitled to under the will, and which the executors, in the proper discharge of their duty, should have furnished to him; and, in the second place, it would have appeared that the assignment had the support of a valuable consideration. Neither of these facts appears in the complainant's bill. It is not alleged that the executors ever refused to comply with a single demand made by the father upon them, except that their failure to honor the order which he drew in favor of the complainant can be regarded as such a refusal; nor that the executors had, at any time, refused or neglected to perform towards the father any duty imposed upon them by the will. The bill, it is true, says that the father complained to the complainant, in the early part of 1881, that he was not receiving the support and attention which he was entitled to under the will, but this averment, it will be observed, is simply by way of recital, and does not affirm the truth of any actionable fact. Under an averment in this form, the complainant would not be required to prove that the father had been deprived of anything which the will gave him, but he would maintain the issue tendered by his pleading by simply proving that the father had complained that he was not receiving what he was entitled to. Such proof would, of course, show no right of action. It is an elementary rule of pleading that a bill must state all the facts on which the complainant's right to relief rests with certainty and clearness, and positively. *Story's Eq. Pl.* § *241*.

But again. This order is worthless in the hands of the com-

plainant, as against the defendants, unless it is supported by a valuable consideration.   At law, a creditor cannot give a right of action to a third person against his debtor by merely drawing an order in favor of the third person upon his debtor.   To make the order in such a case effectual at law against the debtor, he must accept the order, or in some other way manifest his assent to the transfer of his obligation.  *Superintendent of Public Schools* v. *Heath, 2 McCart. 22 ; 2 Story's Eq. Jur.* § *1039.*   Courts of equity, however, view such instruments from a very different standpoint, and are in the constant habit of giving effect to them as equitable assignments, even in cases where no assent has been expressed by the debtor.  *2 Story's Eq. Jur.* § *1040.*   But they will not carry them into effect unless founded upon a valuable consideration.   Mere volunteers, or persons claiming under consideration of love and affection, stand no better in equity than they do at law.  *2 Story's Eq. Jur.* §§ *1040, 1047.*

The order under consideration had the support of a very trifling consideration, if any whatever existed, at the time it was issued.   The bill says that the order was drawn to compensate the complainant for his time and attention already bestowed, and to be bestowed, in looking after the comfort and welfare of Samuel S. Brokaw during the remainder of his life, and also to re-imburse him for such small expenditures as he might be required from time to time to make, and for such as he had, to some extent, already made.   But what time and attention he had already bestowed, whether it covered a period of ten minutes or ten days, and what expenditure he had already made, whether it was ten cents or $10, the bill does not state. And the statement of the bill respecting the consideration given subsequent to the issue of the order is equally obscure and indefinite.   It says that from the date of the order down to the death of Samuel S. Brokaw, the complainant continued to visit Samuel S. Brokaw, to see to it that he was comfortably and suitably cared for, and to attend to his wants from time to time. But how much time was thus occupied?  How many visits did he make?  What did he do?  What would be a reasonable compensation for the services he rendered?  How much money did

he expend? Until these questions are answered, it is impossible for the defendants to know what the case is which they are called upon to meet, and it is likewise impossible for the court to see that the complainant's claim is sufficient, in point of pecuniary value, to make it its duty to take jurisdiction of his suit. If his suit is brought to enforce a claim involving a pecuniary value of less than $50, his suit must, according to the established rule, be dismissed on the ground that it is so insignificant as to be beneath the jurisdiction of the court. *Allen* v. *Demarest, 14 Stew. Eq. 162.*

My conclusion is that the bill, as at present framed, does not exhibit a case which entitles the complainant to a decree. And I think it may well be doubted whether it is possible to state a case on the foundation of the present bill which will entitle the complainant to relief. The principal service which, according to the contract, the complainant was to render to Samuel S. Brokaw, and in consequence of the rendition of which he was to be entitled to compensation, was to procure for Samuel S. Brokaw such support and attention as he was entitled to under the will of Garret G. Brokaw. His bill states what he was to do under the contract, as follows: he was to visit Samuel S. Brokaw from time to time to see that he was provided for and attended to according to the requirements of the will. Now, Samuel S. Brokaw's rights under the will were plainly marked out and definitely fixed. He needed no assistance to obtain them. The amount to be paid him from time to time was to be regulated by his own judgment, and all that it was necessary for him to do to get what he was entitled to was to form a judgment, notify the executors and ask them to pay. So long as he was competent to appropriate and use the money set apart for his needs, the only duties incumbent on the executors were to keep the fund invested and pay the father, from time to time, so much thereof as he required for his own support. They were not required to provide for him nor to attend to him. After investing the fund, their whole duty was done when they, on his demand, gave him what he needed for his own support for the time being. He needed no help to form a judgment as to what he needed, nor to make a de-

Brokaw *v.* Brokaw.

mand. Those were things which he could do for himself, and which the testator intended he should do for himself. He could, of course, like any other person of full capacity, make a contract by which he became bound to pay for services which were unnecessary and useless to him, but he had no authority to apply any part of the fund in question to the discharge of such obligation. His power over the fund was limited to purposes of support. It is therefore extremely doubtful, as I think, whether, under the contract stated in the bill, it was possible for the complainant to render any service which Samuel S. Brokaw had a right, in virtue of his control over this fund, to compensate the complainant for out of the fund.

The suit is defective as to parties. By the will, so much of the fund in question as should, on the death of Samuel S. Brokaw, remain unexpended, is given to such of the children of the testator's brothers Isaac and John as should be living at the time of the death of Samuel S. Brokaw. Three such persons, the demurrer shows, were living at the time of the death of Samuel S. Brokaw. They are not parties to this suit. They have a direct interest in the question presented by the complainant's bill; indeed, they are the only persons whose interests stand directly opposed to the right set up by the complainant. If he succeeds, they lose; if he fails, they gain. All the authorities make *cestuis que trust* thus situated necessary parties. *Stillwell* v. *McNeely, 1 Gr. Ch. 305; Van Doren* v. *Robinson, 1 C. E. Gr. 256; Cool's Exrs.* v. *Higgins, 10 C. E. Gr. 117; Tyson* v. *Applegate, 13 Stew. Eq. 305.* In the case last cited, Mr. Justice Magie, speaking for the court of errors and appeals, states the general rule as follows: "In contests respecting property held in trust the *cestuis que trust* are necessary parties."

The demurrer must be sustained.