Stoll *v.* Sibson.

THOMAS A. STOLL

*v.*

WILLIAM H. SIBSON et al.

[Filed December 22d, 1903.]

A chattel mortgage of a stock of drugs and fixtures covered the goods mentioned in a schedule thereto annexed, and also all other merchandise and personal property which the mortgagor may, while the instrument remains in force, place on the premises, by way of replenishment or addition to the stock. While the mortgage was in force, the stock changed hands several times, the several successive owners buying subject to the mortgage, and all, excepting the last, assuming payment of the mortgage debt. The last purchaser made a collateral agreement with the mortgagee by which notes which he gave for property were to be endorsed to the mortgagee, and on payment thereof the latter was to cancel the mortgage. —*Held*, that the mortgage not only covered the chattels which had been placed on the premises by the mortgagor in the way of addition to the stock on hand, but that it was also a lien on those so placed on the premises by all the subsequent purchasers of the stock, superior to the liens of judgment creditors subsequently levying on the property.

On bill to foreclose chattel mortgage and for injunction. On final hearing.

*Mr. Francis C. Lowthorp,* for the complainant.

*Mr. Linton Satterthwait,* for the defendant W. H. Sibson

*Mr. Edwin C. Long,* for the defendant Irving Diehl.

*Mr. William R. Piper,* for the defendant Benjamin Good.

REED, V. C.

John H. B. Howell, the owner of a drug store, on October 10th, 1895, gave a chattel mortgage to Thomas A. Stoll, to secure the payment of the sum of $3,750 on demand, with interest. The mortgage covered all the goods and chattels mentioned in a schedule thereto annexed, and then in and about the building known as No. 339 North Warren street, in the city of Trenton, and such merchandise and other property as might be hereafter placed in the said premises by way of replenishment or addition to said stock now on hand.

On October 10th, 1895, Howell sold all the property then in the store to Charles E. Sullivan, subject to the chattel mortgage, which Sullivan agreed to pay.

On January 13th, 1902, Sullivan sold the property then in the store to Frank L. Wheatland, subject to the chattel mortgage, which Wheatland assumed as his debt.

On July 11th, 1902, Wheatland sold to William H. Sibson, subject to the chattel mortgage. Sibson did not assume the mortgage debt, but a collateral agreement was entered into between him and Stoll. This agreement set out the chattel mortgage, and set out that Wheatland was the owner of the goods and chattels mortgaged by Howell to Stoll, and that Sibson wished to purchase the said property, and that it was agreed that Sibson should give Wheatland a series of notes, payable in successive periods.

And it was further agreed that if Sibson should deliver these notes to Wheatland, and should get Wheatland to endorse them to Stoll, then upon the payment of all the moneys specified in said notes when and as the said notes matured,

Stoll *v.* Sibson.

Stoll was to cancel and surrender the chattel mortgage, and waive all demand on account of the debts specified in said chattel mortgage.

The question presented is in respect to the extent of the right of a mortgagee in the property in said store (now in the hands of a receiver appointed by this court), as, *first,* against Sibson, the owner; *second,* against a judgment creditor, with a levy made before the appointment of the receiver; and *third,* against a judgment creditor with a levy made after the appointment of the receiver; and *fourth,* as against persons who sold goods to Sibson with the condition that the title to said goods should remain in the vendor until the goods were paid for.

The question, which is the subject of a great contrariety of opinion elsewhere, viz., whether there can be a valid mortgage upon chattels which at the time of the execution of the instrument has neither an actual nor potential existence, has been regarded as settled in this state since the decision by Chancellor Green, in the case of *Smithurst* v. *Edmunds, 1 McCart. 408.* It was held in that case that a mortgage on future-acquired property was valid in equity; that the lien attached as soon as the property was acquired by the mortgagor, and that the lien was superior to that of a judgment creditor, with a levy upon the same property, under a judgment against a mortgagor. This doctrine has been repeatedly recognized and acted upon. *Gevers* v. *Wright, 3 C. E. Gr. 330; Williamson* v. *New Jersey Southern Railroad Co., 2 Stew. Eq. 311.*

It is clear, therefore, that those chattels which had been put into the premises by Howell, in the way of replenishment or addition to the stock on hand, when he gave the mortgage, became subject to the lien of the mortgage.

It is insisted, however, that it is only such goods as were acquired by Mr. Howell that is covered by the mortgage. This position is partly based upon the words at the close of the schedule attached to the mortgage. At the end of the schedule of specific articles are the following words:

"As well all other merchandise and personal property, which said party of the first part (Howell), may hereafter or during such time as this instrument shall remain in force, place in or about such premises by way of replenishment or addition to said stock and goods now there."

Now, it is to be observed that by the language of the mortgage such goods as Howell might add to the property were included in the schedule, and it is to be further observed that the mortgage itself covers, not only the goods and chattels mentioned in the schedule, but also such other personal property as may be thereafter placed in said premises, "by way of replenishment or addition to said stock now on hand." The mortgage, therefore, in terms, covered all goods that might be placed within the premises by way of replenishment or addition to the stock by anyone, as well as the goods mentioned in the schedule, which included the specific articles named, as well as those thereafter placed there by Howell.

Each purchaser of the stock and fixtures purchased subject to the chattel mortgage, so expressed in the bill of sale, and each, except Sibson, assumed the mortgage debt.

It was perfectly obvious, from the language of the mortgage, that its purpose was to perpetuate a lien upon the floating stock in the store, and the words of the instrument, as already observed, are broad enough to include all substituted property.

It is, in my judgment, entirely clear that when Mr. Sibson bought, the mortgage covered all the stock then in the store.

The position of Sibson towards the mortgagee differs from the preceding owners in one respect only, viz., in the amount of money which he was bound to pay to relieve himself of the encumbrance of the mortgage.

The relation between Wheatland and Stoll, as displayed by the testimony, was such that Wheatland was in possession, with legal title, for the purpose of disposing of the business in the interests of Mr. Stoll. When Sibson bought he in fact bought the property from Mr. Stoll.

The consideration was the notes made by Sibson to Wheatland, and endorsed by Wheatland to Stoll. Sibson did not, like the other purchasers, assume the payment of the mortgage,

but assumed to pay the amount of the notes, by becoming the maker of them. The mortgage thereafter became a mortgage to secure the payment of the consideration of these notes, but in all other respects remained the same, as respects Sibson, as it had theretofore been as respected the other owners.

The mortgage, therefore, at the time the receiver took possession, covered all property included in the schedule originally in the premises, and all property which had thereafter, by any of the owners, been placed in and upon the premises, by way of replenishment of such property or in addition thereto.

In regard to the two judgment creditors, it follows, from the doctrine laid down in *Smithurst* v. *Edmunds, supra,* that the liens of their levy is subordinate to the lien of the mortgage upon all chattels covered by the mortgage, whether the lien was obtained before or after the appointment of the receiver.