The bill of complaint was filed for the purpose of foreclosing a chattel mortgage bearing date March 30th, 1929, given by Edward D. Hymer to the complainant to secure an *Page 119 
indebtedness of Hymer then in the amount of $14,138.38, together with any additional or further sum not to exceed, in all, $20,000. The mortgage covered all items of personal property of Hymer, and included the following clauses:
"All hay, corn, wheat, straw, stalks, fodder and manure now or hereafter to be found on mortgagor's properties known as Leary Farm, Richey Farm, Home Farm and Tyler Farm, together with all crops now growing or hereafter to be sown, planted, grown and harvested on said farms or any of them and whether said crops shall be sown or planted, or growing or grown and harvested."
"It is further the agreement of the parties to this mortgage that the same shall and does hereby cover and apply upon and against any and all renewals, replacements or additions to the said stock of horses, cows, pigs, chickens, farm implements, wagons, automobiles and tractors that may hereafter, during the life of this mortgage, come into the hands, possession or ownership of the said Edward Hymer, whether the same shall be in his possession in said County of Cumberland or elsewhere, it being the intention of the foregoing mortgage that same shall be and constitute a lien upon all of the personal property of the said mortgagor that he may own or possess during the life of this mortgage, whether the same be now in his possession or be by him hereafter acquired and including therein all of the right, title and interest of the said Edward Hymer of, in and to the household goods in his home."
Subsequent to the giving of the chattel mortgage aforesaid and after its record in the clerk's office of Cumberland County, Mr. Hymer was adjudicated a bankrupt and discharged as such, and in the bankruptcy proceedings the trustee abandoned all property of Mr. Hymer as being onerous and burdensome.
Subsequent to the bankruptcy of Mr. Hymer, the farming operations theretofore conducted by him were carried on in the name of Bertha Hymer, the wife of Edward Hymer.
After the bankruptcy of Mr. Hymer, Bertha Hymer became the maker of two of the notes secured by the chattel mortgage aforesaid and which had been carried by the bank as the primary obligation of Mr. Hymer. One note was in the sum of $7,230 and the other in the sum of $300. Mrs. Hymer says that she signed these notes as being primarily liable thereon and at the suggestion of Mr. B. Hilliard, the president of the complainant bank, and that she "took over" these two notes to keep them alive, at the request of the bank, "while *Page 120 
her husband was in bankruptcy." She further testified that there was never any talk of her assuming the other notes which had been theretofore secured by the chattel mortgage aforesaid, and further says that there was no suggestion that the crops to be raised by her were to be subject to the mortgage. She further says that she had been requested to sign the chattel mortgage at the time of its creation but that she had refused so to do, and that she never verbally or otherwise agreed to assume the mortgage or the mortgage indebtedness, nor to pay it off; that all she did was to accommodate the bank by keeping the two notes alive, and that she supposed that by signing the notes she would be permitted to carry on the farming operations without hindrance.
There is no testimony to contradict the evidence of Mrs. Hymer,i.e., the complainant offers no proof to the contrary. Mrs. Hymer says, and the complainant does not deny it, that at the time she signed the notes in question no reference whatsoever was made to the chattel mortgage. She admits that she knew of the existence of this mortgage at all times.
During the years succeeding the bankruptcy of Mr. Hymer, Mrs. Hymer not only operated and conducted, in her own name, the Leary Farm, Richey Farm, Home Farm and Tyler Farm, but also the White Clay Farm, which she herself owned. Generally speaking, the crops planted during these years, with the exception of 1937 and 1938, were tomatoes and strawberries, and the evidence discloses that while Mrs. Hymer was able to keep the two notes alive by the payment of interest, and renewals, that her efforts were not financially successful. In 1936 or thereabouts, Mrs. Hymer changed the method of farming by planting peas, beets and lima beans. She was dependent in the planting and cultivating of the crops on credit advanced by the defendant Deerfield Packing Corporation, Star Fish Bone Fertilizer Company and others, who furnished the seed for planting, the fertilizer and other materials necessary in the planting, growing and harvesting of the crops. The general system followed by Mrs. Hymer and the defendants was that the Deerfield Packing Corporation would agree to purchase the crops and to pay Mrs. Hymer therefor; that they would charge against the *Page 121 
moneys to be received by her the cost of the seed, c., which the Deerfield Packing Corporation supplied during the contract year, and as Mrs. Hymer needed fertilizers, she would deliver an assignment of the price thereof to the Fertilizer Company which, in turn, would have it accepted by the Deerfield Packing Corporation, and at the conclusion of the season there would be deducted from Mrs. Hymer's account the amount due the Fertilizer Company. This practice was followed in obtaining a truck that was necessary in the farming operations, as well as for other things needed in connection therewith.
It appears to be undisputed that during each one of the seasons of 1936 to 1938, inclusive, the complainant bank was consulted with reference to the crop contracts for the ensuing year, and that the complainant bank, through its president, expressed entire willingness that the moneys to become due to Mrs. Hymer should be distributed to her and to those who furnished materials, labor, c., necessary for the planting, growing and harvesting of the crops. It is likewise undisputed that the president of the bank agreed that the Deerfield Packing Corporation should contract directly with Mrs. Hymer and pay to her the net crop proceeds, without making the bank a party to any of the contracts.
Mr. Smalley, of the Deerfield Packing Corporation, also contracted with other farmers who were indebted to the bank and discussed with Mr. Hilliard the details with reference to said contracts, in so far as the bank might be interested, and he testified that in the case of one Davis, where the bank held a chattel mortgage, the bank insisted that it be made a party to the crop contracts in that instance.
Mr. Hilliard testified that he was perfectly satisfied that Mrs. Hymer was endeavoring to pay off her note indebtedness to the bank and that, necessarily, he must look to a successful season in order that this indebtedness be eventually paid, and that he realized that Mrs. Hymer had been handicapped.
Thus things stood until the crops had been harvested in 1938, when Mrs. Hymer advised the bank that she could no longer continue and that she would not make any further payments on the note indebtedness, whereupon the complainant *Page 122 
bank gave notice to the Deerfield Packing Corporation that it insisted that the moneys due Mrs. Hymer must be paid to the bank, under the theory that the chattel mortgage aforesaid covered. The bank also insisted that there should be paid to it any moneys that the Deerfield Packing Company may have paid out to others who held assignments from Mrs. Hymer to cover her indebtedness to them for fertilizers, c., insisting also that any moneys paid out by the Deerfield Packing Corporation by virtue of said assignments were due to the bank on the same theory.
Complainant relies, for the maintenance of this suit, upon the cases of Cumberland National Bank v. Baker, 57 N.J. Eq. 231;40 Atl. Rep. 850, and Stoll v. Sibson, 65 N.J. Eq. 552;56 Atl. Rep. 710.
As to the first cited case, there may be no doubt that the decision is that a chattel mortgage upon all "seeds and crops of whatever kind or description, now in the ground, or hereafter to be planted, upon the farm where we now reside," given by a farmer and seed raiser residing on his farm, where in the ordinary course of husbandry he raises crops, duly verified and recorded, is a valid lien upon after-planted crops grown upon that farm as against mortgages thereon created after the crop was severed.
As to Stoll v. Sibson, supra, the factual situation is somewhat different than that presented in the present case. In that case it was held by the Vice-Chancellor that where a chattel mortgage on a stock of drugs and fixtures covered the goods mentioned in the schedule thereto annexed, and also all other merchandise and personal property which the mortgagor may, while the instrument remains in force, place on the premises by way of replenishment or addition to the stock, and while the mortgage was in force the stock changed hands several times, the several successive owners buying subject to the mortgage and all, except the last, assuming payment of the mortgage debt, and the last purchaser made a collateral agreement with the mortgagee by which notes which he gave for the property were to be endorsed to the mortgagee and on payment thereof the chattel mortgage was to be canceled, that the mortgage not only covered the chattels which had *Page 123 
been placed on the premises by the mortgagor in the way of addition to the stock on hand, but was also a lien on those so placed on the premises by all subsequent purchasers of the stock, superior to the lien of judgment creditors subsequently levying on the property. It will be observed that each of the successive purchasers of the drug stock not only bought subject to the chattel mortgage, but that all of these purchasers assumed payment of the mortgage debt, with the exception of the last purchaser, and that as to that last purchaser, a collateral agreement was made with the mortgagee by which notes which he gave as the purchase price for the property were to be endorsed to the mortgagee and on payment thereof the mortgage would be canceled. This collateral agreement was, in effect, an assumption of the mortgage by the last purchaser and was not, therefore, a mere purchase of the drug stock, subject to the mortgage.
In the instant case, there is no evidence of any assumption by Mrs. Hymer of the mortgage debt. All she did was to assume liability on two of the notes secured by the chattel mortgage, and not the entire mortgage debt.
The general rule as to after-acquired property is that stated in Fidelity Trust Co. v. Staten Island Clay Co., 70 N.J. Eq. 550; 67 Atl. Rep. 1078:
"A purchaser of chattels who buys subject to a chattel mortgage which by its terms is to be extended to property subsequently acquired by the mortgagor, is not bound by such covenant, and his after-acquired property is not subject to the lien of the mortgage, unless he has assumed the obligations of the original mortgagor."
The assumption by Mrs. Hymer of the two notes does not, in my opinion, constitute an assumption of "the obligations of the original mortgagor" as to the mortgage debt.
The conclusion above reached is dispositive of the complainant's case, in so far as the defendants other than Mrs. Hymer are concerned. It entitles the complainant to a decree for the amount due on the chattel mortgage, but it does not entitle the complainant to relief as against the Deerfield Packing Corporation and those who have been paid or who look to the funds in the hands of the Deerfield Packing Corporation *Page 124 
for payment of moneys owing them out of the fund due to Mrs. Hymer.
The defendant Deerfield Packing Corporation also set up as a defense an estoppel against the complainant: "from bringing this cause of action against defendant Deerfield Packing Corporation because prior to Deerfield Packing Corporation entering into the three contracts between it and Bertha Hymer set up in the bill of complaint, complainant through its duly authorized agents, officers and servants informed Deerfield Packing Corporation, at its special request to complainant in connection with the proposed contracts, that it, the complainant, neither had any claim or lien of any kind upon any crops of said defendant Bertha Hymer, nor asserted any claim thereto; and said complainant through its officers, agents and servants stated to defendant Deerfield Packing Corporation that it had no objection to Deerfield Packing Corporation contracting with defendant Bertha Hymer for the 1938 crops, and that it would make no claim as to the proceeds thereof, because it had no claim or lien against said crops or proceeds thereof."
The evidence fully justifies me in finding that Mr. Smalley, prior to the planting of the crops for the year 1938, as he did in the years 1936 and 1937, consulted with Mr. Hilliard with reference to the proposed contracts with Mrs. Hymer, and that Mr. Smalley was advised by Mr. Hilliard that the Packing Company could safely contract directly with Mrs. Hymer with reference to said crops and that the only interest of the bank in the matter was that Mrs. Hymer take care of the past due notes. I am satisfied that Mr. Hilliard did not advise Mr. Smalley that the bank held a mortgage against the crops to be grown by Mrs. Hymer, and further satisfied that Mr. Hilliard expressed to Mr. Smalley his further satisfaction that the Deerfield Packing Corporation should pay out of the moneys coming to its hands for Mrs. Hymer the bills of others who furnished the necessary articles for the planting, growing and harvesting of the crops, and I am further justified in finding that these conversations between the president of the bank and Mr. Smalley estopped the bank from now claiming any of the proceeds of the 1938 crops.
I will advise a decree in accordance herewith. *Page 125