The Chancellor.
The first question to be determined is, whether the bond and mortgage made by McMurtrie and King to Peter Williamson are bona fide securities, and entitled to priority of payment out of the funds in the hands of the assignee, Philip J. Gray.
The bill does not question the bona fides of the bond and mortgage. On the contrary, the equity of the complainant is founded on the validity of these securities. Nor does the assignee question their validity. We must, assume, therefore, that the dissolution of the partnership existing between McMurtrie, King and Williamson waf¡ in good faith, and that the bond and mortgage were executed honestly, and as a fair consideration to Williamson for his interest in the concern ; and that the withdrawal of Williamson from the firm, and the assumption by Benjamin McMurtrie and Julius King of the partnership debts, was made honestly and without any intention to defraud either the complainants or any other creditor of the firm. Prom the character of these pleadings, we are relieved from considering to what extent subsequent bona fide creditors are affected by a chattel mortgage such as this, when the property is suffered to remain in the custody and use of the mortgagor. When the assignment *327 was made to Gray, the mortgage was a valid and subsisting lien upon the property assigned. The assignee having sold the property, and converted it into money, the person who can legally claim under the mortgage has an equitable lien on the funds in the assignee’s hands for the payment of this security.
The next question is, who is entitled to the mortgage fund ? James Molyneaux claims it by virtue of bis assignment. The complainants claim it on two grounds: first, by virtue of a legal and equitable lien, which they insist is superior to the right of the assignee, admitting Ms assignment to he valid; and secondly, they contend that the assignment is fraudulent, and under that aspect of tlie ease insist, that as judgment creditors of Williamson, they have a right to a discovery of Ms assets in the hands of the assignee of the mortgage, and to have the mortgage money appropriated to the payment of their debt.
The complainants recovered a judgment against Mc-Murtrie, King and Co. as late partners, of which Peter Williamson was one. He had retired from the firm, and the business was continued by McMurtrie and King. On Williamson’s retiring from the firm, he had taken the mortgage in question, covering all the machinery which was used in carrying on the business of the copartnership. The judgment was recovered on the 5th of December, 1853, and on that day a levy was made by the sheriff on all the mortgaged property. On the seventeenth day of December following the levy, the bond and mortgage were assigned to the defendant, James Molyneaux.
The complainants contend, that by virtue of the mortgage, the legal title to the mortgaged property was in Peter Williamson; that they had a right to levy upon, and sell Ms interest in the property under their judgment and execution, and that the assignment of the mortgage to Molyneaux being subsequent to their levy, the assignee can take only subject to their judgment and execution.
*328 • The question is, whether the interest of a mortgagee in personal property, when the possession remains with the mortgagor, and before condition broken, can be taken in execution as the property of the mortgagee ?
Hilliard, in his Treatise on Mortgages, vol. 2,¶. 270, has collected the authorities in the different states upon this subject. Whatever may be the weight of authority, I have no doubt as to the law in New Jersey. A mortgagor’s interest in personal property is the subject of execution and sale, a mortgagee’s interest is not. It is useless to talk about the mere form of the conveyance, and of its conveying all the legal title to the mortgagee, leaving only a mere equity of redemption in the mortgagor. We must look at the real character of the instrument, and of the rights of the parties under it. The intention of the parties is, that the conveyance shall be a mere security for a debt. If the debt is paid, the mortgage deed is a dead letter, and no reconveyance is necessary to change the title to the property. The mortgagor is in possession, and his title is a perfect one, subject only to the payment of the debt. He is the real and substantial owner of the property for every valuable purpose. He may sell it, subject, of course, to the mortgage. The mortgagee has no control over the property until his debt is due, and then he can take it only for the purpose of making his debt out of it.
In New Jersey, the same doctrine prevails as to the respective rights of mortgagor and mortgagee of personal property, and as to the character of their respective interests, as governs mortgages of real property. The estate of a mortgagee of real property cannot be sold in New Jersey for the mortgagee’s debt, even after a default and a forfeiture of the condition of the mortgage, unless the mortgagee is actually in possession under his mortgage. An equity of redemption has always been, in New Jersey, the subject of sale, and not by virtue of any statute either, as was supposed by counsel in the argument, but because *329 our courts of law followed the good sense of courts of equity in this respect, in spite of mere technicalities, and considered the mortgagor, as he actually is, the real owner of the property.
To say that the person who holds an estate, as the mortgagee does, which at his death passes to his personal representatives, and not to his heirs at law, is superior to one which descends by inheritance, which is subject to dower, and which in fact possesses all the qualities of a legal estate, and that the former may be sold by judgment at law because it is a legal estate, while the latter’ cannot, is sacrificing too much principle and good sense to mere technical rules.
I am of opinion, therefore, that the estate which Williamson held in the mortgage property was not subject to an execution at law, and that the levy of the sheriff constituted no lien upon the property.
But the complainants farther insist, that the assignment of the mortgage is void for fraud, and that the fund in the hands of the assignee belongs to Williamson, and that they, as judgment creditors under this bill of discovery, have a right to the fund, as discovered assets of their debtor, to pay their debt.
If the assignment is fraudulent, the complainants are entitled to have the fund appropriated to pay their judgment. Whatever may be considered the settled doctrine as to the right of a judgment and execution creditor to have a conveyance declared void by a court of equity, when the property transferred is of a character not subject to be taken in execution for the payment of debts, our statute obviates all difficulty upon this ground by affording a creditor adequate relief by giving him a specific remedy by his bill of discovery.
Is the assignment fraudulent ? The want of consideration, together with the time and circumstances under which the assignment was made, are charged as the evidences of fraud. Molyneaux, by his answer, very fully *330 denies the fraud. He alleges, and proves, that the consideration paid by him was $939. It was paid in this wise. An old debt of $175, which Williamson owed Molyneaux, was given up and cancelled, and the balance, being $764.10, was paid in cash, as follows: $370 on the 17th of December, the date of the assignment, $200 on the 19th of December, and the residue, $194.10, on the 20th of the same month. It thus appears that the consideration paid was little less than fifty per cent, of the amount due on the mortgage. But although the assignee gave a valuable consideration, the assignment may nevertheless be fraudulent. If the purchase was not bona fide, but was made to defraud creditors, the conveyance is not valid, although the consideration was a valuable, and even an adequate consideration. Tuyne’s case, 3 Co. R. 81. It is said the price was inadequate. This of itself will not defeat the assignment, unless the price is so grossly inadequate as to be of itself evidence of fraud. Such is not the case here. The security was an uncertain one in some respects. The mortgagors were insolvent, and the mortgage property had been assigned for the general benefit of their creditors. It had been sold, and it was uncertain whether the assignee would recognise the validity of the mortgage. The time of the assignment raises some suspicion as to the bona fides of the transaction. Williamson was insolvent. The complainants had judgment against him, and had taken steps to enforce their judgment against the mortgaged property. It is true the defendant, Molyneaux, denies that he had knowledge of the complainants’ judgment; but there are circumstances and facts proved inconsistent with the truth of this allegation. A proper inquiry made would have put him in possession of all the facts.
After a careful investigation of all the facts of the case, I am not willing to declare the assignment absolutely void for fraud. But I do not think, considering the circumstances under which the assignment was made, that the *331 assignee should be permitted to bold it for anything more than to reimburse himself the advances be made upon it. I shall direct an account to be taken of the principal and interest due upon the bond and mortgage.
Let the costs of all the parties to this suit be first paid out of this fund, and then Molyneaux be reimbursed the advances made by him upon the particular mortgage. The residue must go to the assignee, to be distributed according to law.