FEBRUARY TERM, 1909. 405

*5 Buch.* Brindze *v.* Atlantic City Policemen's Beneficial Ass'n.

## BERNARD BRINDZE

*v.*

## ATLANTIC CITY POLICEMEN'S BENEFICIAL ASSOCIATION.

[Argued February 11th, 1909. Decided March 7th, 1909.]

1. An assignment of revenues to be earned under a contract to conduct a circus for four days is enforceable as an equitable assignment.

2. Under a contract to conduct a circus for four days, entitling the amusement company to draw on funds derived from advance sales of tickets when the show was "on the ground," the show was "on the ground" when the paraphernalia arrived at the show grounds and the actors at their lodgings, and the equitable title to part of funds then vested in the company's assignee, so as to preclude the other party, who had knowledge of the assignment, from defeating the assignee's rights by paying, with the company's consent, money due the actors, who refused to perform unless paid in advance.

3. An assignment of money due under a contract as collateral security must be treated as though not so made, where the debt exceeds the amount claimed under the assignment.

4. A policemen's beneficial association could make a valid contract with an amusement company to furnish show grounds, pay necessary license, and sell tickets for a four days' circus to be conducted by the company, for an equal division of the revenue above a given sum.

On bill to compel defendant to apply certain moneys to complainant's claim. Heard on bill, answer, replication and proofs.

The bill seeks a discovery of certain money which came to the hands of defendant association and a decree that complainant is entitled to the application of the money to the payment of his claim, and also an injunction against the *ad interim* disposition of the funds in question, and an injunction against the further prosecution by defendant association of a pending action at law in which action an attachment has been levied on the funds. The funds in controversy arose from the sale of tickets of admission to a circus known as the Atlantic City Policemen's Circus. The Berger Amusement Company, complainant's assignor,

entered into a written contract with the Atlantic City Police-
men's Beneficial Association dated July 25th, 1908, wherein the
amusement company agreed to institute and conduct at Atlantic
City a circus for four days during the week beginning Monday,
August 24th, 1908, and to give two performances daily, weather
permitting, and to furnish the "amusement enterprise" complete
at their own cost and expense. The beneficial association agreed
to supply at its expense a suitable location and necessary licenses
and to sell the tickets of admission. The first $5,000 derived
from the sale of tickets or other revenues was to go to the amuse-
ment company; all moneys received in excess of that amount
were to be divided equally between the amusement company and
the beneficial association. The contract also contained the fol-
lowing stipulation:

"The parties of the first part further agrees to open a bank account
and deposit all money derived from the sale of tickets and any and all
other sources in one of the Atlantic City banks, but it is understood that
the party of the first part is not to draw out of the bank any of the above
money until their show is on the ground."

On August 4th, 1908, the amusement company executed an
assignment to complainant of the first $2,700 which should be
deposited pursuant to the contract referred to. The assignment
is absolute in form and contains an irrevocable power of attorney
in favor of the assignee. The circus arrived at Atlantic City
pursuant to the contract, but owing to a severe storm it was im-
possible to give a performance until Friday of the week named
in the contract. Before the performance of that day the circus
actors refused to act unless paid in advance, and in order to
enable the show to proceed it became necessary for the beneficial
association to guarantee the amounts demanded by them. The
same conditions arose on the following day and the same course
was adopted. The guarantee of wages referred to was made and
the money was paid by the beneficial association in fulfillment
of its guaranty with the consent of the amusement company,
which consent was given on the day the guaranty was made.
Complainant, as assignee of the first $2,700 of revenues to be
received, seeks an injunction against a pending proceeding at law
in attachment against the fund, and also seeks to recover from

the beneficial association the funds on hand and such additional amount as will be necessary to satisfy the amount due to complainant under his assignment. The testimony is not in entire harmony as to whether the beneficial association received notice of the assignment prior to the time they guaranteed the application of the money to the payment of wages, but the evidence discloses that such notice was undoubtedly received by the beneficial association prior to that time.

*Messrs. Thompson & Cole,* for the complainant.

*Mr. Eli H. Chandler,* for the defendant.

LEAMING, V. C.

The assignment of the first $2,700 of the revenues to be received under the contract was an assignment of money to be earned in the future by the assignor. This court has repeatedly recognized and enforced equitable assignments of this nature. In *Bank of Harlem* v. *Bayonne, 48 N. J. Eq. (3 Dick.) 246, 252,* it is said: "While, properly speaking, an assignment cannot be made of a subject which does not exist, such as a fund to become due on the future performance of a subsisting contract, yet equity, on the possible debt ripening into an enforceable specific money liability, treats the agreement as an assignment *pro tanto* of the fund, and, by force thereof, vests the equitable title to the money in the assignee. * * * On notice being given to the debtor, and the sums being earned under the contract, the debtor becomes trustee or *quasi*-trustee for the assignee as to the amount assigned, subject to existing equities and valid prior charges thereon. * * * From this it follows that neither payments to nor a release or discharge by the assignor, after notice of the assignment, can affect the rights of the assignee against the debtor."

As notice of the assignment had been given to the beneficial association not only prior to the time the money in question was applied to the payment of wages, but also prior to the time that the beneficial association obligated itself to pay the wages, the controlling question in this case is whether under the contract

between the amusement company and the beneficial association the money now in question had been earned by the amusement company at the time it was used by the beneficial association to pay the wages of performers. If, at that time, the money now in question had been so earned the equitable title to it, to the amount of complainant's claim, became vested in complainant as assignee, and defendant beneficial association could not thereafter lawfully use it for any purpose other than to pay it to complainant. If, after the money became payable under the terms of the contract, the beneficial association, with notice of the assignment, saw fit to assume obligations which the contract did not impose on it, the burden of such obligation cannot be charged against the assignee. See *North Bergen* v. *Eager, 41 N. J. Law* (*12 Vr.*) *184.* The contract provided that the amusement company should not draw out of the bank any of the money until their show should be on the ground. All of the proceeds arising from the advance sale of tickets and all other sources were, by the terms of the contract, required to be in the bank at that time. The stipulation was, in effect, a stipulation that the amusement company could draw its share of the proceeds when the show should be on the ground. Under that stipulation the money at that time became payable to the amusement company, and, as already stated, by reason of the assignment referred to, the equitable title to the amount assigned became vested in complainant. It becomes necessary, therefore, to ascertain whether the circus was "on the ground" within the meaning of the contract, before the time when the beneficial association applied the money in question to the payment of wages. It is contended that the show was not on the ground within the spirit of the contract until it was there with all matters arranged and provided for which were essential to a proper performance; that, in consequence, when the actors refused to perform at the beginning of the first performance for the reason that they were not secure in their wages, it was demonstrated that a show had not at that time been placed on the ground in conformity to the requirements of the contract. I am satisfied that under the evidence in this case that view cannot be properly adopted. Two witnesses of extended experience in the business of supplying

shows of this nature have testified that the expression "show on the ground" has a well-recognized technical meaning in transactions of this class; that by reason of the fact that great expense is necessary to assemble a show at a given locality where a performance is to be had, it is a necessity and uniform custom of persons in the business of supplying shows to require the use of the money received from advance sales of tickets and concessions as soon as a show arrives at the locality agreed upon, and to that end the expression "show on the ground" is uniformly understood to refer to that event. That, I think, is the meaning of the expression as it is used in the present contract. The show in all its parts arrived at Atlantic City early in the week pursuant to the requirements of the contract, and was then ready to perform. By reason of a severe storm no performance could be given until the following Friday, and that delay, which was through no fault of the amusement company, occasioned all the trouble which followed. Upon the arrival of the complete paraphernalia of the show at the show grounds and the actors at their lodgings ready to perform when called upon, the money then on hand was, in my judgment, earned by and payable to the amusement company, and at that time the equitable title to the money due to complainant as assignee vested in him under his assignment; as the beneficial association at that time had notice of the assignment they could not thereafter deprive the assignee of his right to receive his money. The assignment was made to complainant as collateral security, but the amount due to complainant from his assignor has been proven to be an amount in excess of the amount which defendant will be required to pay. Under these circumstances the assignment must be treated exactly the same as though it had not been by way of collateral security. *Todd* v. *Meding, 56 N. J. Eq. (11 Dick.) 83.*

It is also urged that defendant beneficial association was without power to make the contract. I think the contract was within its powers and was made by its authority.

Complainant is entitled to a decree directing defendant to pay to him $348.30 now under its control, and also to pay to complainant, in addition thereto, $1,516.57 as the amount wrongfully applied.