This is a suit brought by complainant, Structural Gypsum Corporation (hereafter referred to as the Gypsum Company) to recover from the defendant, The National Commercial Title and Mortgage Guaranty Company (hereafter referred to as the Mortgage Company), the sum of $4,500 said to be assigned by the Church Construction Company to the Gypsum Company.
At the time of the assignment which is the basis of this suit, the Church Construction Company was erecting apartment house buildings on Harrison street, East Orange. The Mortgage Company held a $250,000 mortgage upon one of these buildings, known as 150 Harrison street. This mortgage was of the type commonly referred to as a construction mortgage, and the moneys secured by it were advanced to Church Construction Company from time to time as the erection of the apartment house building progressed.
On March 15th, 1928, Church Construction Company was indebted to the Gypsum Company in the sum of $4,444.45, with interest from December 23d 1927, or a total of $4,505.91, for materials furnished and used in the erection and construction *Page 34 
of the apartment house building, No. 150 Harrison street, East Orange, New Jersey, upon which the Mortgage Company held its mortgage.
At that time the Gypsum Company was in a position to file a mechanics' lien against this apartment house property. It also had a substantial claim against the adjoining apartment house building which was being erected by the Church Construction Company. It had canceled its contract for furnishing materials for the latter building and was in a position to file a mechanics' lien against it.
On or about March 15th, 1928, Church Construction Company and the Gypsum Company, the complainant, reached an agreement whereby the complainant was to withhold filing a mechanics' lien against the apartment house building upon which the Mortgage Company held its mortgage and reinstate its contract for furnishing materials for the adjoining apartment house building.
As part of the consideration for this agreement, Church Construction Company agreed to give the Gypsum Company an order for $4,500 upon the Mortgage Company, to be paid to the Gypsum Company from the balance of the $250,000 mortgage loan above referred to. At that time $34,175.75 was still to be advanced upon this mortgage loan.
Church Construction Company thereupon executed and delivered to the Mortgage Company an instrument in writing as follows:
 "March 15, 1928. Title No. 390. Church Construction Co. 150 Harrison Street, East Orange, N.J.
To the National Commercial Title and Mortgage Guaranty Company, 24 Commerce St., Newark, N.J. Gentlemen:
I hereby authorize you (and this shall be your warrant and authority for so doing) to pay the sum of forty-five hundred dollars ($4,500) to Structural Gypsum Corporation, 53 Park Place, New York City, *Page 35 
which said firm has furnished materials on my building at 150 Harrison St., East Orange, N.J. Said sum to be paid before final payment is made to Church Construction Co.
 CHURCH CONSTRUCTION CO., Julius Church, President."
On March 21st, 1928, Whiting Moore, attorneys of the Gypsum Company, advanced to the Mortgage Company a letter captioned:
 "Re Title No. 390 Church Construction Co."
Wherein they stated that they represented the Gypsum Company which had furnished materials to the Church Construction Company, in the construction of the Harrison street building, the concluding paragraphs of which letter are as follows:
"We understand that the Church Construction Company has authorized you to pay to our client the sum of $4,500 from the final payment to be made on the mortgage which you hold on this property.
"Will you be good enough to confirm this and also advise us whether there are ample funds in your hands to be paid on account of this mortgage to take care of this payment to Structural Gypsum Corporation."
On March 22d 1928, the Mortgage Company replied by a letter captioned:
 "In re Title No. 390."
stating that the Church Construction Company had given it an order in the amount of $4,500 payable to the Gypsum Company which they had placed in their files, the concluding paragraph of which letter is as follows:
"While we do not guarantee the payment of these orders, still we shall always have this record before us and will co-operate with your clients in every way possible."
The Gypsum Company, in accordance with its agreement, refrained from filing a mechanics' lien upon said apartment house building upon which said mortgage was given and subsequently lost its right to such a lien and refrained from suing *Page 36 
Church Construction Company for the payment of the said sum of $4,444.45 with interest, and from pressing said Church Construction Company from payment of the same, until after the said Church Construction Company was placed in the hands of a receiver by the court of chancery of New Jersey, and until after it lost its right to such mechanics' lien. It likewise completely reinstated the contract which it had canceled for furnishing materials to the adjoining apartment house, and proceeded to fulfill the same.
Instead of honoring the document of March 15th, 1928, the Mortgage Company thereafter paid the $34,175.75, the balance of said $250,000 mortgage loan to the said Church Construction Company in twelve checks, payable to the order of said Church Construction Company, which in turn used the moneys thus received to pay creditors other than the complainant.
Five thousand dollars was paid by the Church Construction Company to the Federal Trust Company on a prior order held by it, dated December 12th, 1927, $4,000 was used by the Church Construction Company to pay the wages of mechanics employed by it for the completion of the said building and the balance was paid by said Church Construction Company to various creditors for work done toward the completion of said building subsequent to March 15th, 1928.
Upon the payment of the moneys, the building was substantially but not fully completed; its final completion being effected by the receiver of the Church Construction Company.
The complainant contends that the agreement with the Church Construction Company, together with the instrument dated March 15th, 1928, hereinbefore quoted, constitute an equitable assignment to the complainant to the extent of $4,500 named therein, and that the defendant, Mortgage Company, upon receiving notice of this assignment thereafter held in trust for the complainant the unadvanced mortgage moneys, to the extent of said $4,500, and that the defendant could not avoid its obligation to pay that sum to the complainant by paying the moneys to the Church Construction Company. *Page 37 
The learned vice-chancellor who heard the case in the court below held that the basis of the claim was the letter dated March 15th, 1928 (quoted above), and limited the question at issue as to whether this letter acted as an equitable assignment, and held, that, under the case of Seyfried et al. v. Stoll et al.,56 N.J. Eq. 187, it did not so act because this letter did not definitely designate a fund out of which the moneys purported to be assigned were payable; and held, that since the unpaid balance of the mortgage loan as of March 15th, 1928, was applied first to the discharge of a prior assignment held by the Federal Trust Company, and second to the cost of labor and material actually used toward the completion of the building, the money, which it was anticipated that the Church Construction Company would eventually receive, never became payable to it but was applied to other proper purposes, and that therefore, the fund, if any, out of which the $4,500 was assigned, never came into existence.
There is no proof in the case to show any agreement between the Church Construction Company and the Mortgage Company giving the latter a right to withhold advances until it was assured that its mortgage would cover a completed building; nor to authorize the Mortgage Company to complete the work, unless the paragraph in the stipulation of facts that "the mortgage loan was to be handled as the usual construction loan to the end that the proceeds of said loan should be advanced as the building progressed in construction," could be construed as conferring such rights. It is not necessary to determine this question, however, for the reason that such rights, if any, were not exercised.
All the money due to the Church Construction Company on and after the date of the letter of March 15th, 1928, was thereafter paid by the Mortgage Company, direct to the Church Construction Company, and by the Church Construction Company disbursed among its various creditors, other than complainant.
The vice-chancellor, in applying the decision of the court inSeyfried v. Stoll, supra, quoted a part of the statement made by Vice-Chancellor Emery in his opinion, to the effect *Page 38 
that he had not been referred to any decision in the courts of New Jersey in which an equitable assignment had been held to have been made by an order, in which the order itself did not appear to designate and appropriate the fund in the owner's hands, or part of it.
The application of this principle, we think, was erroneously applied to the instant case.
In the Seyfried v. Stoll Case there was nothing except the order itself, which did not designate any fund from which the money was to be paid, from which the court could determine whether or not there was an equitable assignment and the court held that when the assignment depends upon the construction of the order itself a plain and sure test of construction is said to be whether the order or direction to the drawee, if assented to by him, would create an absolute indebtedness payable by him at all events, or whether it would create an obligation only to make payment out of the particular designated fund. The court then applied that test to the case before him and properly held thereunder that there was no equitable assignment.
That this was the basis of the court's conclusion is clearly shown by the following excerpt from his opinion:
"The question is whether the order in favor of J. Cahagan's Sons is an equitable assignment in their favor of the fund which thereafter became due. This depends, in my judgment, upon the construction which is to be given to the order itself.
"No equitable assignment or agreement to assign the fund, or any part of it, between Stoll and Gahagan's Sons, independent of the order, is set up in the answer or appears in the proofs.
"Nor have any facts been proved which are entitled to control the construction of the order in this respect.
"Some very high authorities hold that such agreement, even by parol, independent of the written order, and collateral thereto, may be proved, in order to establish an equitable assignment by the order; and others hold that parol evidence is admissible for the purpose of showing the intention and understanding of the parties, where the language of the order *Page 39 
is ambiguous, and the order is not negotiable, * * *. But the present case does not, either on the pleadings or proofs, fall within either of these classes; and the question whether there was an equitable assignment of the fund, due or to become due from Mrs. Seyfried, must therefore be determined by the construction and operation of the order itself.
"The cases decided in our own courts hold that no particular form of assignment is necessary, and that equity, disregarding form, will hold any writing which plainly appropriates the fund to be an equitable assignment. Bower v. Hadden Blue Stone Co.,30 N.J. Eq. 171; affirmed, Ibid. 340."
The vice-chancellor has fallen into the error of considering only the written order given by the Church Construction Company to the Mortgage Company, dated March 15th, 1928, without taking into consideration other important facts in the case. The only evidence in the case is set forth in a stipulation of facts, which among other things states that on or shortly prior to March 15th, 1928, Church Construction Company agreed to give the Gypsum Company an order for $4,500 upon the Mortgage Company to be paid to the Gypsum Company from the balance of the $250,000 mortgage loan, and that on March 15th, 1928, Church Construction Company executed and delivered to the Mortgage Company the letter or order of March 15th, 1928; that title No. 390 (which was captioned at the head of all the letters) is the designation given by the defendant, Mortgage Company, to its $250,000 mortgage loan and said letters refer to that loan.
One of these letters was the letter of March 15th, 1928, which is the letter the vice-chancellor held did not designate the fund from which the $4,500 was to be paid. Even if this be true, this letter coupled with the stipulated testimony that the words "Title No. 390" referred to the mortgage loan of "$250,000" and further coupled with the admitted fact that the letter itself referred to the loan of $250,000, leaves no doubt as to the fund from which the $4,500 was to be paid, and as a matter of fact there was no doubt in the minds of any of the parties to the transaction. *Page 40 
Our courts have repeatedly held that —
"An equitable assignment need not be in writing. It may be written or oral or partly written and partly oral."
"The great object of courts of equity, in cases of this kind, is to give effect to the intention of the parties."
"No attention is paid to mere matter of form; if the court can clearly discern the purpose of the parties, it will give effect to it regardless of the method by which such intention is expressed."
"Any order, writing or act which clearly indicates that the assignor intended to make over a fund belonging to him, amounts in equity to an assignment of the fund." Shannon v. Mayor,c., of Hoboken, 37 N.J. Eq. 123; affirmed, Ibid. 318; Cope v.C.B. Walton Co., 77 N.J. Eq. 512; affirmed, 79 N.J. Eq. 165;Brokaw v. Ex'rs of Brokaw, 41 N.J. Eq. 215.
"An assignment, for a valuable consideration, of a sum of money due, or to grow due, on the performance of an existing contract will, on notice thereof being given to the debtor, operate as an equitable assignment of so much of the fund as is covered thereby, subject to all valid prior charges."
"On notice of the assignment being given to the debtor, and the possible debt ripening into an enforceable money liability, equity vests the equitable title pro tanto of the fund in the assignee, of whom the debtor becomes the trustee orquasi-trustee as to the amount assigned, subject to existing equities."
"Payment, after notice of the assignment, to any person other than the assignee, will not relieve the debtor of his liability to the assignee." Bank of Harlem v. Bayonne, 48 N.J. Eq. 246;affirmed, Ibid. 646.
"Where an order is drawn on a particular fund and presented to the debtor, there is an equitable assignment, though the debtor refuses to recognize the assignment." Cope v. C.B. Walton Co.,supra.
We are of the opinion that under the decisions of the courts of our state and the uncontradicted evidence presented in this case there was an equitable assignment to the complainant of the Church Construction Company's right in and to the unpaid balance due on said mortgage loan to the extent of *Page 41 
$4,500, and that the defendant Mortgage Company, having received notice of this assignment, must be considered to have held said $4,500 in trust for the complainant and cannot avoid its obligation to pay the same to complainant because it thereafter paid the balance of said mortgage loan to the Church Construction Company.
The decree of the court of chancery dismissing the complainant's bill must be reversed.
For affirmance — None.
For reversal — THE CHIEF-JUSTICE, TRENCHARD, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.