GINA BROWN AND PETER CURRIE T/A STARFINDERS RE-
CORDING STUDIO, PLAINTIFFS, v. WILDWOOD VOLUNTEER
FIRE COMPANY NO. 1, JAMES PETERSON AND JUDITH PE-
TERSON (JOINTLY, SEVERALLY AND IN THE ALTERNA-
TIVE) AND THE CITY OF WILDWOOD, A MUNICIPAL CORPO-
RATION, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Cape May County

Decided March 30, 1988.

558

*Jack Edward Granzow*, for plaintiffs.

*Henry Gorelick*, for defendant Wildwood Volunteer Fire Company No. 1, (*Gorelick & Groon*, attorneys).

*Paul W. Dare*, for defendants James Peterson and Judith Peterson.

*James P. Savio*, for defendant City of Wildwood, (*Gormley, Savio, Reynolds & Drake*, attorneys).

RIMM, J.T.C. (temporarily assigned).

This matter involves the right of a voluntary fire company to conduct a business on municipal property leased to it. There are no reported cases in New Jersey dealing with the extent to which this can be done.

Plaintiffs allege that they operated a recording studio on the boardwalk in Wildwood in the spring and summer of 1986. They further allege that the City of Wildwood, by an ordinance enacted on or about August 15, 1984, leased to the Wildwood Volunteer Fire Company No. 1 an 18–feet by 24–feet area adjoining the boardwalk at Oak Avenue. According to plaintiffs, the fire company "assigned and subleased [its] right, title and interest over" the property to defendants, James Peterson and Judith Peterson, who then operated a recording studio at the property. Plaintiffs finally allege that the operation of the recording studio by defendants, Peterson, caused plaintiffs to be unable to operate their business profitably. They claim damages, a declaration that the ordinance is void, and relief under 42 *U.S.C.A.* §§ 1983, 1985 (1976).

On May 14, 1986, plaintiffs, as tenants, entered into a lease for the "Southwesterly corner of 3410 Boardwalk, Wildwood, New Jersey, known and identified as 3410 Boardwalk, Unit D, as shown on Exhibit A attached" to the lease. Exhibit A is a diagram showing the block known as 3410 Boardwalk. Unit D is an area approximately 20 feet by 16 feet located at the rear of the property approximately 150 feet from the boardwalk. The lease commenced on May 9, 1986 and terminated on September 9, 1986 and had a two-year renewal option. Plaintiffs also entered into a license agreement on May 7, 1986 with Recording Studios of America, Inc., by which plaintiffs were granted, for a five-year term, the exclusive "right, license and privilege to rerecord at least one hundred forty (140) musical compositions with studio 'singalong' vocals." Additional recordings were also to be provided to plaintiffs under the license agreement. After entering into the lease and the license agreement, plaintiffs constructed a recording studio in Unit D and installed equipment in the studio in accordance with their license agreement.

Plaintiffs opened their studio to the public after the Memorial Day weekend using the trade-name Starfinders Recording Studio and continued its operation until the second week of July 1986. The studio was closed from June 24, 1986 to June 30, 1986 because of water damage.

The business operated by plaintiffs involved recording songs customers sang to the accompanyment of music which plaintiffs had a right to rerecord in accordance with their license agreement. The recordings were made on cassettes. Plaintiffs promoted their business by distributing "flyers" listing the songs available as background music in their recording studio and by "barking." This consisted of one plaintiff standing at their landlord's property's entrance on the boardwalk and talking to people in an effort to get them off the boardwalk and into plaintiffs' studio. Plaintiffs were not permitted to leave the property when they were "barking."

On or about July 3, 1986, the fire company opened a recording studio, similar to plaintiffs', at Oak Avenue and the boardwalk. The studio, located in a trailer, fronted directly on the boardwalk. The location was between plaintiffs' location and the busier, or more traveled, portion of the Wildwood boardwalk, to the north of Oak Avenue. The trailer was marked "Superstar Recording Studio" and had the fire company's logo on it.

Plaintiffs claim that the competition of the recording studio operated at Oak Avenue and the boardwalk, particularly given its location between plaintiffs' location and the busier portion of the boardwalk, effectively shut down their business.

Ordinance 54–84, with final passage on August 15, 1984, authorized the City of Wildwood to lease to the fire company certain premises 18 feet by 24 feet on the westerly side of the boardwalk at the intersection of Oak Avenue and the boardwalk. Among other things, the ordinance provided for a nominal consideration and stated that a public purpose is served by the fire company's aid and assistance to the residents, citizens and taxpayers of Wildwood by the fire protection service offered without charge. The ordinance also provided that the lease shall not be assignable by the fire company, although the ordinance apparently contemplated that others might assist the fire company in activities on the demised premises. Section 10 of the ordinance provides that the lease shall be voidable at the option of Wildwood, if among other things, "any person, persons or corporation engaging in the *conduct* of an amusement game on the Leasehold premises," emphasis supplied, violated certain statutory provisions or certain rules and regulations of agencies of the State of New Jersey.

In accordance with the ordinance, the fire company went on the premises in the summer of 1985 and engaged in various activities. In the summer of 1986 it conducted the recording studio which is the subject of this litigation. In conducting the studio, it engaged defendants, James Peterson and Judith Pe-

terson, to manage and operate the studio. The Petersons were experienced in this type of business having such a studio at another location on the boardwalk. Most, if not all, of the equipment at the Oak Avenue location was equipment leased by the Petersons for which the fire company paid from the receipts of the operation of the studio during the summer of 1986. In addition, the fire company paid the Petersons a management fee. Of the total proceeds received for the summer of 1986, the fire company realized approximately $15,000 which it used for its purposes.

For some years, based on ordinances adopted prior to ordinance 54–84, the fire company had operated revenue raising activities at the location. The activities conducted by the fire company included the sale of books, a ring toss, games of chance and similar boardwalk-oriented amusement activities. Proceeds received from these activities were used to pay a mortgage on the firehouse built by the fire company membership. For the summer of 1986, based on the recommendation of defendants-Peterson, the fire company decided in the late winter or early spring of that year to operate a sound recording studio at the Oak Avenue and the boardwalk location.

 Plaintiffs claim that the city had no authority to lease the subject premises to the fire company for a nominal amount, and the ordinance is therefore invalid. Essentially, plaintiffs argue that the lease of the property should have been on the basis of competitive bidding. This contention is put to rest adversely to the plaintiffs' position by *Willingboro Tp. v. Mobil Oil Corp.*, 159 *N.J. Super.* 593 (App.Div.1978). In that case, the court said:

> The use of a lease arrangement as a vehicle for providing a firehouse for a volunteer company has received legislative sanction. *N.J.S.A.* 40A:12–14(c) authorizes a municipality to lease a capital improvement to a nonprofit corporation for a public purpose and *N.J.S.A.* 40A:12–15(a) goes so far as to specify 'the provision of fire protection ... by an association duly incorporated for such purposes' as a public purpose. [*Id.* at 595]

While a firehouse has not been built on the subject property, the lease arrangement provided for in ordinance 54–84 was clearly a vehicle for providing a firehouse for the volunteer fire company. It has been stipulated by the parties that the fire company is a nonprofit corporation of the State of New Jersey, and there is no dispute that the funds realized by the fire company from the subject location, during the year 1986 and in prior years, has been used for the proper purposes of the fire company, either for the payment of the mortgage on the fire company's firehouse or for other purposes such as, for example, the purchase of uniforms. Accordingly, the ordinance constituted a proper exercise of municipal authority. *See also Schwartz v. Stockton,* 32 *N.J.* 141 (1960) (the provision of fire protection by a volunteer fire company is a governmental function); *D'Ercole v. Mayor & Council,* 198 *N.J. Super.* 531 (App.Div.1984) (lease from volunteer fire company to borough had governmental purpose and implicated the public welfare and safety).

In the alternative, plaintiffs argue that the property which is the subject of ordinance 54–84 was not municipal property and that the city therefore has no authority to lease the property to the fire company. Plaintiffs have not produced any evidence as to who the owner of the property is, if the City of Wildwood is not the owner. Nor has any person or other entity come forward claiming ownership and disputing the right of the city to lease the property. Accordingly, the subject property was and is owned by the city. In any event, if it was not owned by the city, the owner, and not plaintiffs, would have a cause of action for trespass or otherwise.

■ Plaintiffs argue that, if the ordinance were proper, the fire company has violated the provisions which prohibit the assignment of the lease by the fire company. The basis of this contention is the operation of the recording studio on the subject property by defendants-Peterson. The evidence before the court is to the effect that, some time in the late winter or

early spring of 1986, the fire company considered operating a recording studio on the subject premises. One of the members of the fire company was defendant, James Peterson, a Wildwood businessman who operated a recording studio on the boardwalk at Morey's Pier, approximately a quarter of a mile north of the location of the subject property in the direction of the busier and more traveled portion of the boardwalk. As a result of conferences among officers of the fire company and defendants, Peterson, the fire company concluded to operate a recording studio at the subject property and to hire the Petersons at a fixed management fee to operate the studio. The testimony of the officers of the fire company is that none of them had the knowledge or ability to operate a recording studio, although they believed that such an operation would benefit the fire company and, hence, the city. Defendants, Peterson, were in fact paid a management fee for their services, and they did operate the business of a recording studio on the subject premises. The evidence before the court is also to the effect that the fire company was regarded by the city as responsible for the operation at the subject property. The testimony of one of the members of the fire company was that his telephone number and that of another officer of the company were given to the persons at the studio to be called in the event of any problems. From time to time when there were problems, such as excessive noise, officers of the fire company were contacted and did in fact take steps to cure any problems. In addition, the testimony was that the fire company saw that the trailer in which the studio was located on the subject property was properly manned and that the business was conducted in a proper manner.

"An assignment is the transfer of the whole interest of the assignor." *Stark v. Nat. Research and Design Corp.*, 33 *N.J. Super.* 315, 320 (App.Div.1954). An assignee does not retain some control or interest in a lease. *Berkeley Dev. v. Great Atlantic & Pacific Tea*, 214 *N.J. Super.* 227, 236 (Law Div. 1986). The evidence before the court does not indicate that

there was an assignment of the lease by the fire company to defendants-Peterson, such as to constitute a violation of the ordinance. The fire company did not give up its "whole interest" in the lease.

■ The critical issue before the court is whether the fire company may hire managers to assist it in its fund raising activities. Plaintiffs have not cited any authority which would indicate a prohibition against the use of employees or management people by a fire company in carrying out its activities, providing, of course, that such activities are proper in the first instance. There is no contention that the fire company's activities were improper or illegal or that the funds realized by the fire company were used for an improper purpose. While a volunteer fire company's activities are generally carried out by volunteers and by its members, there is nothing in the law which prohibits a volunteer fire company from hiring persons to assist it in carrying out its activities.

Fire companies were originally dealt with in chapter 8, "Fire Companies" of Title 15 "Corporations and Associations Not For Profit," *N.J.S.A.* 15:8–1 *et seq.* With the exception of *N.J.S.A.* 15:8–4, –5 and –7, all other sections of the chapter have been repealed. The repealed sections related to incorporation of volunteer fire companies and to the rights, powers, privileges, benefits, advantages and immunities of volunteer fire companies. These subjects are now dealt with in Title 15A, the "New Jersey Nonprofit Corporation Act." *N.J.S.A.* 15A:2–1(a) specifically provides that a nonprofit corporation may be organized as a volunteer fire company. A volunteer fire company is empowered to engage in all of the lawful activities in which any other nonprofit corporation may engage. Accordingly, a volunteer fire company, as a nonprofit corporation, may:

> take and hold by lease, gift, purchase, grant, devise or bequest any property, real or personal, necessary or desirable for attaining the objects and carrying into effect the purposes of the corporation and to purchase, lease or otherwise acquire, own, hold, improve, use and otherwise deal in and with, real or personal property, or any interest therein, wherever situated subject, however, to any

alteration or modification made by general law as to the amount of real and personal property to be held by the corporation; .... [*N.J.S.A.* 15A:3–1–(a)(4)]

In addition, a volunteer fire company may:

participate with others in any corporate entity, partnership, limited partnership, joint venture, or other association or any kind, or in any transaction, undertaking or arrangement which the participating corporation would have power to conduct by itself, whether or not that participation involves sharing or delegation of control with or to others; [*N.J.S.A.* 15A:3–1(a)(14)]

The Nonprofit Law Revision Committee stated that *N.J.S.A.* 15A:3–1 is based on *N.J.S.A.* 14A:3–1 and *N.J.S.A.* 15:1–4 and said:

Paragraph 15A:3–1a(14) is based on paragraph 14A:3–(1)(m) of the New Jersey Business Corporation Act and permits nonprofit corporations to participate with business corporations in joint endeavors whether for economic gain or otherwise. For example, a nonprofit corporation and a business entity may wish to cooperate in activities such as making grants for public purposes or in joint activities which would generate funds or information for general welfare or public purposes.

The statutory provisions clearly grant a volunteer fire company authority to engage in activities such as those in the present case.

Although these statutory provisions have not been judicially interpreted with regard to voluntary fire companies, our Court of Errors and Appeals dealt with a similar situation involving a policemen's beneficial association. In *Brindze v. Atlantic City Policemen's Beneficial Ass'n.*, 75 *N.J.* Eq. 405 (Ch. 1909), aff'd 77 *N.J. Eq.* 272 (E. & A. 1910), the Court concluded that a policemen's beneficial association may validly contract with an amusement company to furnish show grounds, pay the necessary license fees, and sell tickets for a circus to be conducted by the company, with revenue to be divided equally above a given sum.

 Neither the city nor the fire company has done anything improper on the basis of which plaintiffs have any claim against them. However, at least one other issue raised by plaintiffs should be considered. They argue that they are entitled to relief under 42 *U.S.C.A.* §§ 1983, 1985 (1976). To establish a claim under § 1983, a party must show the deprivation of a

right secured by the United States Constitution or the laws of the United States. *Salerno v. O'Rourke*, 555 *F.Supp.* 750 (D.C.N.J.1983); *Hauptmann v. Wilentz*, 570 *F.Supp.* 351 (D.C. N.J.1983). A prerequisite to establishing a cause of action under § 1983 is proof of the existence, and a deprivation, of the secured protected right. *McDonough v. Jorda*, 214 *N.J.Super.* 338 (App.Div.1986).

Stripped of all its embellishments, plaintiffs' claim is that they have a federal constitutionally protected right to be free of competition in the operation of a business. While it is true that property rights, as well as personal liberty, are protected by the constitution, plaintiffs have not cited any authority to indicate that the United States Constitution protects them from business competition.

The complaint is dismissed. Counsel for the fire company will prepare and submit a form of judgment under the five-day rule dismissing the complaint and providing that no costs are allowed for or against any party.